On December 1, 1990, Jennifer Driver was a passenger in a vehicle that was involved in a collision with another vehicle operated by Jackie Dale Dennis, an uninsured motorist. Driver sustained personal injuries as a result of the accident. Dennis was also injured in the accident and died as a result of his injuries. At the time of the accident, a liability insurance policy issued by National Security Fire Casualty Company ("National Security") contained uninsured motorist benefits enuring to the benefit of Driver. The vehicle in which Driver was a passenger was being driven by Paige Cobb Posey. Evidence presented indicated that both Posey and Dennis may have been intoxicated at the time of the accident.
Driver, a minor, filed an action by and through her mother and next friend, Deborah S. Cleckler, naming as defendants the uninsured motorist Dennis and National Security.[1] Her complaint alleged that the uninsured motorist had negligently or wantonly operated his vehicle in such a manner as to cause her injuries. The complaint also included a claim against National Security for uninsured motorist benefits, premised upon the negligence or wantonness of the uninsured motorist. Deborah S. Cleckler, individually, also sued the defendants, for medical expenses and loss of consortium incurred as a result of her daughter's injuries.
In its answer to Driver's complaint, National Security asserted the affirmative defense of assumption of the risk. National Security claims that Posey's intoxication prevented her from avoiding the accident. Because Driver knew that Posey had been drinking, National Security argues that Driver placed herself in the danger that caused her injuries. After the action was filed, the probate court appointed Attorney Robert Bowers, Jr., administrator ad litem for the estate of Jackie Dale Dennis. Attorney Bowers also represented the estate of Dennis in the pending litigation. In August 1993, National Security opted out of the trial of the case, pursuant to the authority of Lowe v. Nationwide Ins. Co., 521 So.2d 1309
(Ala. 1988). On the eve of trial, Attorney Bowers requested that William F. Smith II, former counsel for National Security, enter an appearance for the uninsured motorist's estate and assist in the trial. On November 1, 1993, over objection by the plaintiffs, Smith entered an appearance for the estate of Jackie Dale Dennis, as co-counsel with Attorney Robert Bowers, Jr. *Page 392 
Before trial, Driver moved for a directed verdict against the defendants' affirmative defense of assumption of the risk. The trial court denied the motion.
The trial began on November 3, 1993. The jury rendered a verdict in favor of Dennis's estate. The court entered a judgment on the verdict, in favor of Dennis and National Security. Driver appealed; National Security also appealed, complaining of the court's order assessing costs.
Driver first contends that the trial court erred in denying her motion for a directed verdict on the defendants' defense of assumption of the risk. She next contends that the trial court committed reversible error by permitting the former attorney for National Security to represent the estate of Jackie Dale Dennis (the uninsured motorist) at trial. National Security argues that the court erred in taxing administrator ad litem fees and expenses totaling $2,495.55 against National Security.
The first issue before us is the propriety of the trial court's order denying Driver's motion for a directed verdict with respect to the assumption of the risk defense. The plaintiff contends that the trial court erred when it overruled her motion for a directed verdict and submitted the affirmative defense of assumption of the risk to the jury. A directed verdict is proper (1) where the non-moving party has failed to present substantial evidence regarding some element essential to his claim, or (2) where there is no disputed issue of fact upon which reasonable persons could differ. Rule 50(a), Ala.R.Civ.P.; John R. Cowley Bros., Inc. v. Brown,569 So.2d 375, 376 (Ala. 1990); Koch v. State Farm Fire Cas. Co.,565 So.2d 226, 228 (Ala. 1990); Dobbs v. Alabama Power Co.,549 So.2d 35, 36 (Ala. 1989). Therefore, we must determine whether the estate of Jackie Dale Dennis, in order to withstand Driver's motion for a directed verdict, presented substantial evidence from which a jury could find each element of the defense, or whether there were no disputed issues of fact upon which reasonable persons could differ.
Whether the trial court erred in denying Driver's directed verdict motion "is tested by a purely objective determination of whether the party having the burden of proof has produced [sufficient] evidence [to create a factual dispute] requiring resolution by the jury." Ex parte Oliver, 532 So.2d 627, 628
(Ala. 1988). Because the trial court's ruling on a directed verdict motion is based on an objective standard, and, thus, is not discretionary, review of such a ruling on appeal is denovo. Otis Elevator of Gadsden, Inc. v. Scott, 586 So.2d 200,203 (Ala. 1991), citing King Mines Resort, Inc. v. MalachiMining Minerals, Inc., 518 So.2d 714 (Ala. 1987). Additionally, in reviewing the ruling on a motion for a directed verdict, this Court must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable evidentiary inferences as the jury would have been free to draw. Wadsworth v. Yancey Bros. Co., 423 So.2d 1343,1345 (Ala. 1982).
Driver argues that the trial court erred in denying her motion for a directed verdict because, she says, there was no way she could have known that Dennis would be driving intoxicated, and would collide with the car in which Driver was a passenger. National Security contends that Posey could have avoided the accident had she not been drinking. National Security then argues that Driver was well aware of the dangers of getting into a vehicle with a drunk driver, and nevertheless put herself in danger by occupying a vehicle operated by Posey, who was, or might have been, intoxicated. At the outset we note that a plaintiff must have assumed the risk created by thedefendant in order for that defendant to have a valid defense of assumption of risk. This is an essential element of that defense. Employers Cas. Co. v. Hagendorfer, 393 So.2d 999
(Ala. 1981); see Vines v. Birmingham Baseball Club, Inc.,450 So.2d 455, 456 (Ala. 1984); see W. Prosser, Handbook on the Lawof Torts, § 68 (5th ed. 1984). However, despite the "assumption of the risk" label used by plaintiff's counsel it is clear that the elements of National Security's affirmative defense constitute a form of contributory negligence closely akin to assumption of risk. See McGeever v. O'Byrne, 203 Ala. 266,82 So. 508 (1919). This kind of contributory negligence *Page 393 
"runs to third persons, [e.g., Dennis], regardless of the plaintiff's knowledge of the incompetence of those third persons." Employers Cas. Co. v. Hagendorfer, 393 So.2d 999,1001 (Ala. 1981). In other words, this kind of contributory negligence can serve as a defense for a third person, even if the plaintiff had no knowledge of the third person's incompetence. See Walker v. Bowling, 261 Ala. 46, 72 So.2d 841
(1954); Crouch v. De Luxe Cab Co., 261 Ala. 239, 73 So.2d 743
(1954). In Brown v. AAA Wood Products, Inc., 380 So.2d 784, 787
(Ala. 1980), this Court described this variety of contributory negligence:
 "[A] person riding in an automobile driven by another is not absolved from all personal care for his own safety, but has the duty of exercising reasonable or ordinary care to avoid injury. . . . The duty of the passenger is, therefore, not original, with respect to the operation of the vehicle, but is resultant and is brought into effect by known and appreciated circumstances."
(Emphasis added.) This element of "known and appreciated circumstances" giving rise to the duty of personal care is also a criterion for the assumption of the risk defense. That defense requires proof of two essential elements: (1) knowledge and appreciation of the risk and (2) voluntary exposure to that risk. Employers Cas. Co. v. Hagendorfer, 393 So.2d 999
(Ala. 1981); Kemp v. Jackson, 274 Ala. 29, 145 So.2d 187 (1962). This court has often recognized the overlapping of these two affirmative defenses in certain fact situations. See Kemp v.Jackson, 274 Ala. 29, 145 So.2d 187 (1962); McGeever, supra. It is apparent that, despite the misleading labels applied by the parties and the trial court, the defense of contributory negligence was raised in this case. The known and appreciated circumstance that gave rise to Driver's duty of due care for her own safety was her knowledge that Posey was or might be intoxicated. Such incompetence on the part of the driver can give rise to a duty of care, as discussed in McGeever, supra. As this court noted in Brown v. AAA Wood Products, Inc.,380 So.2d 784, 787 (Ala. 1980), "With respect to this duty, it can make no difference in principle whether the suit is against a third person, or against the driver who negligently operates the car in which the passenger is riding; the duty of the passenger is the same in either case."
There was substantial evidence from which a jury could conclude that Driver was aware of the dangers of getting into a car with an intoxicated driver and nevertheless put herself in danger by occupying a vehicle operated by someone who she knew had been drinking. Driver was 16 years old at the time of the accident. She testified that she and two friends, Paige Cobb Posey and Nicole Brookshire, went to a party at a friend's house to watch the Alabama-Auburn football game on December 1, 1990. However, before they went to the friend's house, they had gathered at Posey's trailer. They then went to the friend's house, and on the way each of the three prepared a drink consisting of Canadian Mist whiskey and Coca-Cola. Posey, according to Driver's testimony, had a mixed drink in her hand the entire time the girls were at the party. When the game ended, Driver and her two friends left and went back to Posey's trailer. Driver testified that they heard that "a lot of people were going to be at Steve Street's house," and that upon hearing this they went by his house, but found nobody there. The girls then decided to drive to Clanton. As they were on their way to Clanton, the accident occurred. Trooper Darrell E. Moore, who observed the accident scene, stated that Posey appeared to be under the influence of alcohol or drugs. His opinion was based upon the way she acted, the smell of alcohol, and the look in her eyes. He testified that there was alcohol in her vehicle. Trooper Moore also testified that Posey refused to submit to a test for alcohol. In her interrogatory answers, Driver stated the following in response to a question asking whether the girls had consumed alcoholic beverages on the day of the accident:
"27. Yes.
 "(a) We had been drinking during the Alabama-Auburn football game. Ms. Cobb had several mixed drinks and was intoxicated. I had approximately 2 drinks and I am not sure how much Nicole Brookshire had to drink. *Page 394 
 "(b) We were drinking Canadian Mist mixed with Coke.
"(c) At our friend's house."
At trial, when asked if she was drunk at the time of the accident, Posey replied, "I don't think so." This evidence was sufficient to create a jury question as to whether the plaintiff had a duty of personal care. The issue of contributory negligence is to be determined by the jury, as a general rule, and ordinarily should not be disposed of by the trial court in a peremptory manner. Brown v. AAA Wood Products,Inc., 380 So.2d 784 (Ala. 1980); Patterson v. Seibenhener,273 Ala. 204, 137 So.2d 758 (1962). The trial court properly denied a direct verdict for Driver on the contributory negligence defense.
Driver's second contention is that the trial court erred in allowing National Security to opt out pursuant to Lowe v.Nationwide Ins. Co., 521 So.2d 1309 (Ala. 1988), and, yet, have former counsel for National Security represent the estate of Jackie Dale Dennis. National Security opted out under Lowe, to prevent the jury's knowing that insurance was involved in the case. In order to avoid any conflict, National Security agreed to waive any subrogation rights it might have against the estate of Dennis in the event there was a verdict for Driver. Furthermore, National Security agreed, as required by Lowe, to be bound by the jury's decision as to liability and damages and to satisfy any judgment for Driver, up to the policy limits.Lowe, supra, at 1310.
Expressing concern that the evidence of underinsured motorist insurance could have a corrupting influence on a jury in determining the liability of an underinsured motorist, this Court in Lowe stated:
 "A plaintiff is allowed either to join as a party defendant his own liability insurer in a suit against the underinsured motorist or merely to give it notice of the filing of the action against the motorist and of the possibility of a claim under the underinsured motorist coverage at the conclusion of the trial. If the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would be bound by the factfinder's decisions on the issues of liability and damages."
521 So.2d at 1310. (Emphasis original.)
In Ex parte Edgar, 543 So.2d 682 (Ala. 1989), the insured sued an alleged tort-feasor to recover damages arising out of an automobile accident and sued Alfa Mutual Insurance Company to recover underinsured motorist benefits. Alfa sought to exercise its option not to participate in the trial of the driver's claims against the tort-feasor. Alfa did, however, seek to participate in discovery and then to intervene, if necessary, in order to protect its interest. The trial court denied Alfa's motion to withdraw, stating that the motion was not timely. This Court held that Alfa had the right under Lowe to withdraw from the case, i.e., that the election was timely, but held that its withdrawal from the case terminated its right to participate in discovery. Ex parte Edgar, supra, at 685.
The plaintiff cites Lowe and Edgar for the proposition that if an insurance company opts out of the trial in an uninsured motorist case it cannot "participate" in the trial by hiring an attorney for the uninsured defendant motorist. We disagree.
Both Lowe and Edgar involved a situation where the defendant motorist was allegedly underinsured. In such a situation, where the defendant motorist has liability insurance but the limits may not be sufficient to fully satisfy the potential judgment against him, the defendant motorist has an attorney retained by the carrier to defend him. When the underinsured carrier is named as a defendant, and chooses to opt out of the trial of the case, there is an attorney defending the interest of the underinsured motorist. As this Court acknowledged in Lowe, the underinsured motorist carrier, in opting out of the case, is essentially placing its fate in the hands of an attorney chosen by someone else. 521 So.2d at 1310. *Page 395 
A different situation is created when the defendant motorist has no liability coverage: If the uninsured motorist carrier opts out of the trial of the case and there is no defense counsel already in place to represent the defendant motorist, then there is no mechanism to protect the interests of the insurer if the defendant motorist fails to, or chooses not to, defend his case. Understanding the need for the uninsured motorist insurance carrier to protect its interests, we hold that once the carrier opts out of the trial underLowe, it may, in its discretion, hire an attorney to represent the uninsured motorist defendant.
On cross-appeal, National Security contends that the trial court abused its discretion in taxing administrator ad litem fees and expenses against National Security. In December 1993, Attorney Bowers, as administrator ad litem for the estate of Jackie Dale Dennis, filed a motion requesting the court to approve the administrator ad litem's fees and expenses, and to tax them as costs. The trial court approved attorney fees and expenses incurred by the administrator ad litem totaling $2,495.55 and taxed them against National Security.
The taxing of costs pursuant to Rule 54(d), Ala.R.Civ.P., is left to the sound discretion of the trial judge, and the trial judge's order in that regard will not be reversed absent an abuse of discretion. Smith v. Smith, 482 So.2d 1172 (Ala. 1985). After carefully reviewing the record, we conclude that the court did not abuse its discretion in granting Bowers's motion.
The judgment of the trial court is due to be affirmed.
1930762 — AFFIRMED.
1930819 — AFFIRMED.
ALMON, HOUSTON, KENNEDY, COOK and BUTTS, JJ., concur.
MADDOX, J., concurs specially.
INGRAM, J., concurs in the result (without opinion).
[1] She also sued Walter T. McKinney, the owner of the vehicle operated by the uninsured motorist, but the claims against McKinney were dismissed.